FILED

2006 Aug-02  AM 11:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ] ] ] | |
| Plaintiff, | ] ] | |
| vs. | ] ] | CV-05-CO-2469-W |
| DIANE SIMMONS, | ] ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment filed on February 24, 2006, by Plaintiff/Counter Defendant State Farm Fire and Casualty Company ("State Farm").  (Doc. 9.)  State Farm filed a complaint for declaratory judgment against Defendant/Counter Plaintiff Diane Simmons ("Simmons") on December 1, 2005.  (Doc. 1.)  Simmons then filed a counterclaim for breach of contract against State Farm on December 23, 2005.  (Doc. 4.)    State Farm has moved for summary judgment on all of Simmons' claims.  The issues raised in State Farm's motion for summary

judgment have been briefed by both parties and are now ripe for decision.
Upon full consideration of the legal arguments and evidence presented by
the parties, State Farm's motion for summary judgment will be granted in
all respects.

II.    Facts.[1]

On December 17, 2004, Simmons reported a leaking pipe to a State
Farm agent and filed a claim for benefits.  The agent reported the claim to
State Farm Fire Claims Central on January 11, 2005.  That same day, a State
Farm Claims Representative spoke to Simmons.  She informed State Farm
that there was moisture on the floor of her home and that the floor felt
soft.   State Farm advised Simmons that there may be problems with
coverage if it was determined that the claim was based upon a long term
leak, rot, and mold.  State Farm told Simmons that an adjuster would need
to perform an inspection.  Two days later, State Farm Claims Representative

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts
claimed to be undisputed, their respective responses to those submissions, and the
Court's own examination of the evidentiary record.  All reasonable doubts about the
facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks
Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for
summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r
U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Chris Reese ("Reese") contacted Simmons and arranged an appointment to inspect the home on the following Monday, January 17, 2005, in order to assess the damage.

On January 17, 2005, Reese inspected Simmons' home.  Reese noticed the floors were warping in the den, hallway, bathroom, and kitchen.  He also noted a soft spot around the kitchen's entrance.  Reese informed Simmons that a "tear in" of the floor was necessary, that State Farm would pay for only the "tear in" if the claim was determined to be excluded from Simmons' policy, and that Simmons would be responsible for any repairs necessitated by the "tear in."  Reese instructed Simmons to set up an appointment with a plumber and to call Reese at the time of the appointment.

On February 7, 2005, Reese contacted Pete at Steele Construction.  He advised Pete that the cause of the leak needed to be determined, and they agreed to meet at Simmons' residence to perform the "tear in."  On February 11, even though Reese was out of the office, Pete went to Simmons' residence to perform the "tear in."  He removed the brick work on the side of the house in order to gain access to the area beneath the

house.  Pete inspected under the den, but was unable to gain access to the area under the kitchen without removing the flooring.  Pete informed Reese of his inspection on February 14, 2005, when Reese returned to the office.

The next day, Reese performed a reinspection with Pete and Simmons. They, again, could not gain access to the kitchen.  Reese noted the floor expansion was due to the following conditions: the crawl space was only eight inches above the ground, there was no vapor barrier, and the sub-flooring was made of particle board.  Reese explained to Pete and Simmons that the loss did not appear to be covered by Simmons' policy.  Reese then instructed Simmons to contact a plumber in order to determine the cause of the problem.

On February 21, 2005, Robert Bates ("Bates") with Spanky's Plumbing inspected Simmons' home.  Simmons and Bates contacted State Farm. While they were still unable to locate the leak that caused the damage, Bates informed State Farm that the kitchen floor, floor joists, and sub-floor were wet and rotten.  State Farm advised Simmons that rot and deterioration were not covered.  Simmons stated that she wanted State Farm to reinspect her home.  On the afternoon of the 21st, Reese

reinspected Simmons' home.  His inspection confirmed there was a leak between the kitchen and the den due to the rotten joists and sub-flooring. While Reese was unable to locate the leak, he advised Simmons that there was no coverage for repair of the floor due to policy exclusions.

On February 22, 2005, Simmons contacted State Farm to discuss the status of her claim.  State Farm told her that there was no coverage for repairs due to rot.  Simmons informed State Farm that Reese told her to contact a plumber and that the plumber could confirm that the cause of the loss was from a pipe that had burst.  State Farm stated that, nonetheless, the resulting rot and deterioration was not covered under the policy.  State Farm dictated a letter denying the claim and issued a draft to pay for the "tear in."

On February 23, 2005, Simmons spoke with State Farm and was again told that the policy did not cover rot and deterioration.  State Farm signed and mailed the denial letter to Simmons, setting forth the pertinent provisions excluding coverage.

On March 2, 2005, Simmons filed a voluntary petition for Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of

Alabama, Western Division.  In the Section entitled "Schedule B — Personal Property, Question Twenty (20)," Simmons was asked to list "other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to set off claims."  Simmons listed a possible workers' compensation claim.  Additionally, in the Section entitled "Statement of Financial Affairs, Question Four (4)," Simmons was asked to "list all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case."  Simmons listed that she was a member of a class action suit against Associates Financial.  Simmons  did not list a claim for insurance benefits or a potential claim for denial of benefits in these sections or anywhere in her petition.

On May 6, 2005, Simmons filed an Amended Chapter 13 Plan Summary. Under Section IV, Special Provisions, she made the following statement, "debtor proposes to pay all pre-petition lawsuit proceeds over her exemption amount to the Trustee to be distributed pro rata among her creditors."  This related to the class action against Associates Financial, which Simmons was a member of the class.  Again, Simmons failed to state

that there was a potential claim against State Farm for denial of benefits even though State Farm had verbally denied Simmons' claim and had sent a denial letter on February 23, 2005.

On May 17, 2005, a Notice of Amendment to Schedules was entered by the Clerk for the United States Bankruptcy Court.  Simmons amended her petition to include the Internal Revenue Service ("IRS") as a creditor.  Yet again, Simmons did not notify the Court of her potential lawsuit against State Farm.

On June 16, 2005, Attorney Gene T. Moore ("Moore") contacted State Farm and informed it that he was representing Simmons for her claim against State Farm, and he faxed a letter indicating the same.  State Farm advised Moore that the claim was closed and partially denied.  Moore advised State Farm that he believed Simmons' claim was covered, and State Farm indicated that the claim would be reviewed.  The following day, Reese contacted Moore.  Reese advised Moore that continuous seepage of water was not covered.  On June 21, 2005, Reese again contacted Moore and told him that the denial letter stood for the reasons set forth therein.  Moore stated that he would move forward with a lawsuit, including, among other

claims, that "act of God" was not addressed in the denial letter issued to Simmons.  Subsequently, Moore followed up with a letter asserting that the leak in the pipe was the result of freezing, a sudden event that should be covered.  That same day, the Bankruptcy Court entered a Confirmation Order and Order for Installment of Payment of Filing Fees.  Simmons never notified the Court of the lawsuit that Moore told Reese he would pursue.  Simmons asserts that she did not list the potential claim against State Farm because she believed that this matter would be resolved through her policy coverage and that the damage to the home would be repaired with no additional proceeds given to her.

Following receipt of Moore's letter, State Farm retained an expert, American Testing, to inspect the pipe.  The report of the test stated that the pipe had not failed due to freezing but rather due to corrosion and deterioration.

On November 30, 2005, State Farm filed a complaint for declaratory judgment.  Simmons filed an answer to the complaint and a counterclaim against State Farm on December 23, 2005.  State Farm subsequently filed this motion for summary judgment on February 24, 2006.  Simmons filed an

application with the United States Bankruptcy Court for the Northern District of Alabama to employ the law office of Gene T. Moore on February 27, 2006. This application became effective on February 28, 2006, and was approved by Order of the Court on March 7, 2006.  Simmons subsequently filed a Third Party Complaint and Amended Counterclaim on April 11, 2006.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

State Farm contends that Simmons' counterclaims should be dismissed because they are barred by the doctrine of judicial estoppel.  (Doc. 9, Ex. 9, p. 11.)  Simmons maintains that her counterclaims against State Farm should not be dismissed based on her consistent position in both matters,

her lack of intent to deceive, and that applying judicial estoppel would penalize Simmons' creditors.  (Doc. 25, p. 7.)

Judicial estoppel is a judge-made federal doctrine which regulates inconsistent positions in successive litigation.  18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4477 at 549 (2d ed. 2002).  It is an equitable doctrine that precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002); *see also Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1271 (11th Cir. 2004); *Barger v. City of Cartersville*, 348 F.3d 1289, 1293 (11th Cir. 2003).   "In the context of a bankruptcy case, judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the claims and had a motive to conceal them from the bankruptcy court."  *DeLeon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003).  The doctrine exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the

moment." *Burnes*, 291 F.3d at 1285 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).

The Eleventh Circuit generally considers two factors when determining the applicability of judicial estoppel to a particular case. *See Burnes*, 291 F.3d at 1285. "'First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.'" *Id.* (quoting *Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001)). In *New Hampshire*, the Supreme Court noted that "'the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.'" *Burnes*, 291 F.3d at 1285. The Supreme Court went on to list three factors that "[c]ourts typically consider:"

> (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party.

*Id.* (quoting *New Hampshire*, 532 U.S. at 750-51).   In light of *New Hampshire*, the Eleventh Circuit noted that the two factors enumerated in *Burnes* "are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Burnes*, 291 F.3d at 1286.

In the case at hand, the fact that Simmons submitted her bankruptcy filings under oath to the bankruptcy court is undisputed.   The issue thus becomes whether Simmons intended to defraud the judicial system. *See id.*

In addressing a debtor's obligation to disclose, the Eleventh Circuit stated:

> A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court.  11 U.S.C. § 521(1) and 541(a)(7).  The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change. *See* [*In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999)].  Full and honest disclosure in a bankruptcy case is "crucial to the effective functioning of the federal bankruptcy system." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al.*, 81 F.3d 355, 362 (3d Cir. 1996) . . . .  "[T]he importance of full and honest disclosure cannot be overstated." *Id.*

*Burnes*, 291 F.3d at 1286.  State Farm argues that Simmons had multiple opportunities to disclose her claim against State Farm to the bankruptcy

court, including when she filed her Schedule of Personal Property, Statement of Financial Affairs, and Amended Chapter 13 Plan Summary. (Doc. 9, Ex. 9, p. 5-7.)  Indeed, it appears that Simmons had at least three opportunities to disclose this claim:  the first when she filed her initial petition in March of 2005, the second when she amended her Plan Summary in May of the same year, and the third when she made another amendment to include the IRS as a creditor later that same month.  (Doc. 9, Ex. 4-6.) State Farm further argues that Simmons understood that the bankruptcy petition required her to list potential claims because Simmons listed both a possible workers' compensation claim as well as a pending class action. (Doc. 9, Ex. 9, p. 20.)  In addition, State Farm contends that Simmons cannot argue that she was not aware that the potential claims against State Farm had accrued because her claim was denied verbally and in writing before she even filed her bankruptcy petition.  *Id.*

Simmons does not deny that she failed to disclose her claim against State Farm in her bankruptcy filings, but rather asserts that she did not intend to defraud the court in doing so.  (Doc. 25, p. 7.)  Simmons claims that she never tried to conceal her claim against State Farm from the

Bankruptcy Court.  *Id*.  In support of this contention, Simmons points to a letter from her attorney, Moore, to State Farm's counsel mailed on January 27, 2006, that informed State Farm that Simmons had filed for bankruptcy. *Id*. at 8-9.  Based on this letter, Simmons asserts that "it should be clear that [she] had no intention of manipulating the court system by hiding any potential assets from the Bankruptcy Court." *Id*. at 9.  Simmons also points to the fact that she filed an application to employ counsel with the Bankruptcy Court on February 27, 2006, in order to pursue any potential counterclaims against State Farm.  *Id*. at 11.  This was over two months after she filed her counterclaims against State Farm.  (Doc. 4; Doc. 25, Ex. 1.) Simmons argues that the application to employ counsel coupled with the letter to State Farm's counsel illustrate that she did not attempt to conceal this matter from the Bankruptcy Court and that, instead, it shows that she put the Bankruptcy Court on notice of the underlying claim and her counterclaims against State Farm.  (Doc. 25, p. 11.)

Even if the letter to State Farm's counsel and the application to employ counsel put the Bankruptcy Court on notice of Simmons' potential claim against State Farm, the nondisclosure cannot be considered

inadvertent.  The failure to comply with the Bankruptcy Code's disclosure duty is "inadvertent" only when a party either lacks knowledge of the undisclosed claims or has no motive for their concealment.  *See Barger,* 348 F.3d at 1295; *DeLeon*, 321 F.3d at 1291.  Simmons had knowledge of the undisclosed claim against State Farm.  Her attorney informed State Farm that he and Simmons would pursue a lawsuit against State Farm on the same day that Simmons' bankruptcy petition was confirmed.  (Doc. 9, Ex. 2, p. 1.)  In fact, Moore stated nine reasons why he would proceed with the lawsuit.  *Id.*  Therefore, it is clear that Simmons discussed her potential claim against State Farm with her attorney prior to the confirmation of her bankruptcy petition.  Yet, she never amended her petition to include this claim, despite the inclusion of other claims.

Neither Simmons' letter to State Farm's counsel nor her application with the Bankruptcy Court to employ counsel aids her cause.  The foremost responsibility in this matter was for Simmons to fully disclose her assets.  She did not satisfy her duty.  Notifying State Farm of the fact that she filed for bankruptcy did not fulfill her duty to inform the Bankruptcy Court of all potential claims.  Simmons cites to several cases to support her proposition

that seeking leave of the Bankruptcy Court to hire Moore satisfied her duty to inform it of her claim against State Farm.  (Doc. 25, p. 9.).  *See Ryan Operations*, 81 F.3d 355;  *In re Roundabout Theatre Co., Inc.*, 131 B.R. 14 (S.D.N.Y. 1991); *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W. 2d 646 (Tex. App. El Paso 1997). However, these cases are factually distinct from the instant case.  For example, while the debtor in *Andrews* never identified which attorney was the defendant of the suit, he listed the pending malpractice action that was at issue.  *See Andrews*, 959 S.W. 2d at 648-49. The court could not determine that Andrews was "playing fast and loose" with the courts because he listed the claim in his bankruptcy petition, albeit vague, and he sought leave of the bankruptcy court to hire an attorney specifically to bring the action.  *Id*. at 650.  In the instant case, Simmons never even listed a potential claim against State Farm, vague or otherwise. Moreover, Andrews sought leave to hire an attorney six months before he filed his lawsuit.  Simmons' application to employ counsel was not filed until two months after she had already filed her answer to State Farm's complaint as well as filing counterclaims against State Farm.   Further, Simmons employed Moore as her counsel before her bankruptcy petition was

confirmed, not merely once State Farm filed its complaint against her.  She had plenty of time to amend her petition to include a claim against State Farm.

Simmons appeared to gain an advantage when she failed to list her potential claims against State Farm on her schedule of assets.  Omitting these claims from the schedule appeared to benefit her because by omitting the claims, she could keep any proceeds for herself and prevent them from becoming part of the bankruptcy estate.   *See Barger*, 348 F.3d at 1296; *Burnes* 291 F.3d at 1287.  Thus, Simmons' knowledge of her discrimination claims and motive to conceal them are sufficient evidence from which to infer her intentional manipulation.  *Id*.

Finally, Simmons points to *Richardson v. United Parcel Serv.*, 195 B.R. 737 (E.D. Mo. 1996), to support her contention that judicial estoppel should not apply in this case because it would penalize Simmons' creditors.  (Doc. 25, p. 17.)  In *Richardson*, however, the bankruptcy case was still open.  The court noted that in a situation where the bankruptcy proceedings had concluded, plans had been confirmed, and assets had been distributed, the interests of plaintiff's creditors would not carry the same weight.

*Richardson*, 195 B.R. at 739.  Further, none of the Eleventh Circuit cases cited by either party consider creditor penalization in the application of judicial estoppel.  *See Muse v. Accord Human Res.*,129 Fed. Appx. 487, 2005 WL 891015 (11th Cir.);  *Barger*, 348 F.3d 1289;  *DeLeon*, 321 F.3d 1289; *Burnes*, 291 F.3d 1282;  *Telfair v. First Union Mortgage. Corp.*, 216 F.3d 1333 (11th Cir. 2000)*; Original Appalachian Artworks v. S. Diamond Assoc., Inc.*, 44 F.3d 925 (11th Cir. 1995);  *McKinnon v. BCBS*, 935 F.2d 1187 (11th Cir. 1991).  Creditor penalization does not prove that Simmons' omissions were inadvertent.  As such, the fact that Simmons' creditors may be penalized if her claims against State Farm are dismissed deserves no favor. Therefore, summary judgment is due to be granted in favor of State Farm on this claim.

V.     Conclusion.

For the reasons set forth above, State Farm's motion for summary judgment is due to be granted in all respects.  A separate order in conformity with this opinion will be entered.

Done this <u>2nd</u> day of <u>August 2006</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153